# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
# MARTINSBURG

**HCR MANORCARE, INC., and**
**HEARTLAND OF MARTINSBURG WV, LLC,**

    Plaintiffs,

v.                                                      **CIVIL ACTION NO.: 3:16-CV-32**
                                                                     **(GROH)**

**MARY BETH YOUNGBLOOD, Administratrix**
**for the Estate of Mary Etta Youngblood,**

    Defendant.

## MEMORANDUM OPINION AND ORDER DENYING DEFENDANT'S MOTION TO DISMISS OR, IN THE ALTERNATIVE, MOTION TO ABSTAIN AND GRANTING PLAINTIFFS' MOTION TO COMPEL ARBITRATION

Currently pending before the Court is the Defendant's Motion to Dismiss or, in the Alternative, Motion to Abstain [ECF No. 5] and the Plaintiffs' Motion to Compel Arbitration [ECF No. 7]. For the reasons set forth below, the Court **DENIES** the Defendant's Motion to Dismiss or, in the Alternative, Motion to Abstain and **GRANTS** the Plaintiffs' Motion to Compel Arbitration.

## I. Background

Mary Etta Youngblood ("the decedent") was a nursing home resident at Heartland of Martinsburg WV, LLC ("Heartland")—a subsidiary of HCR ManorCare, Inc. ("ManorCare")—during May 13, 2014, through May 30, 2014. On May 15, 2014, the decedent signed an admission agreement with Heartland and the following day she executed a separate voluntary arbitration agreement. The arbitration agreement provided, in pertinent part:

> All claims arising out of or relating to this Agreement, the Admission Agreement or any and all past or future admissions of the Patient at this Center, or any sister Center operated by any subsidiary of HCR ManorCare, Inc. ("Sister Center"), including claims for malpractice, shall be submitted to arbitration.

ECF No. 1-1 at 1. As a result of alleged medical negligence during her residency at Heartland, the decedent suffered physical and emotional injury and subsequently died on June 25, 2014.

On February 16, 2016, the Estate of Mary Etta Youngblood ("the Estate") served a notice of claim and certificate of merit upon ManorCare; HCR ManorCare, LLC; HCR MC Operations, LLC; Manor Care, Inc.; HCR Manor Care Services, LLC; Heartland Employment Services, LLC; Heartland; and Nancy Mason. The notice of claim stated the Estate's intent to file a medical malpractice suit "relate[d] to the care and treatment provided to [the decedent] at Heartland." ECF No. 7-2 at 4. More specifically, the notice of claim alleged that during her residency at Heartland, the decedent "suffered permanent and irreparable injury and death resulting from Defendants [*sic*] failure to follow the accepted standard of care." ECF No. 7-2 at 4. Following their receipt of the notice of claim, on March 17, 2016, ManorCare and Heartland sent the Estate a letter demanding that arbitration be initiated, pursuant to the May 16, 2014 arbitration agreement, within seven days. Absent any reply from the Estate, on March 28, 2016, ManorCare and Heartland filed a complaint with this Court to compel arbitration against the Estate pursuant to the arbitration agreement. One week later, on April 4, 2016, the Estate filed a wrongful death action in the Circuit Court of Kanawha County, West Virginia, against HCR ManorCare, LLC; ManorCare; HCRMC Operations, LLC; Manor Care, Inc.; HCR Manor Care Services, LLC; HCR IV Healthcare, LLC; Heartland Employment Services,

2

LLC; Heartland; Nancy Mason; John Does 1 through 10; and Unidentified Entities 1 through 10.

On April 18, 2016, the Estate filed its motion to dismiss or abstain in this case, raising several arguments. First, the Estate argues that the arbitration agreement signed by the decedent does not apply to it as a nonsignatory. Next, the Estate contends that the complaint filed by ManorCare and Heartland should be dismissed because they failed to join Nancy Mason, the licensed nursing home administrator of Heartland during the decedent's residency, who the Estate avers is a necessary and indispensable party. Additionally, the Estate claims that the relief sought by ManorCare and Heartland is improper in light of the Anti-Injunction Act ("AIA"), 28 U.S.C. § 2283. Finally, the Estate argues that the Court should abstain from exercising jurisdiction pursuant to Younger v. Harris, 401 U.S. 37 (1971), and Colorado River Water Conservation Dist. v. United States, 424 U.S. 800 (1976). On May 5, 2016, ManorCare and Heartland filed their motion to compel arbitration, arguing that the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1-16, is applicable to the Estate's claims presented in the state court wrongful death action and requesting that this Court compel the Estate to arbitrate pursuant to the terms of the May 16, 2014 arbitration agreement. Both parties' motions have been fully briefed and are ripe for review.

## II. Standards of Review

### A. Rule 12(b)(6) Motion to Dismiss

Rule 12(b)(6) of the Federal Rules of Civil Procedure allows a defendant to challenge the sufficiency of a complaint by moving to dismiss it for failing "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). When reviewing a motion to

3

dismiss pursuant to Rule 12(b)(6), the Court must assume all of the allegations contained within the complaint to be true, resolve all doubts and inferences in favor of the plaintiff and view the allegations in a light most favorable to the plaintiff. Edwards v. City of Goldsboro, 178 F.3d 231, 243-44 (4th Cir. 1999). Nevertheless, if a complaint fails to allege "enough facts to state a claim to relief that is plausible on its face," it must be dismissed. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). Even though "detailed factual allegations" are not required, a complaint must offer "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (internal quotations and citation omitted). For example, a complaint that provides "labels and conclusions or a formulaic recitation of the elements of a cause of action will not do." Id. (internal quotations and citation omitted). Likewise, a complaint that tenders only "naked assertion[s] devoid of further factual enhancement" does not suffice. Id. (alteration in original) (internal quotations and citation omitted). A plaintiff is required to articulate facts that, when accepted as true, "show" he is plausibly entitled to relief. Francis v. Giacomelli, 588 F.3d 186, 193 (4th Cir. 2009) (citing Iqbal, 556 U.S. at 678). In reviewing a Rule 12(b)(6) motion, courts may consider facts derived from sources beyond the four corners of the complaint, including documents attached to the complaint and the motion to dismiss, "so long as they are integral to the complaint and authentic." Philips v. Pitt Cty. Mem'l Hosp., 572 F.3d 176, 180 (4th Cir. 2009).

**B.  Rule 12(b)(7) Motion to Dismiss**

Rule 12(b)(7) of the Federal Rules of Civil Procedure allows for dismissal of an action when a necessary and indispensable party has not been joined as required by Rule 19. See Fed. R. Civ. P. 12(b)(7). In considering a 12(b)(7) motion, the court must first

4

determine, pursuant to Rule 19(a), whether the absent party "is necessary to a proceeding because of its relationship to the matter under consideration." Owens-Illinois, Inc. v. Meade, 186 F.3d 435, 440 (4th Cir. 1999) (internal quotations omitted) (quoting Teamsters Local Union No. 171 v. Keal Driveaway Co., 173 F.3d 915, 917-18 (4th Cir. 1999)). If the absent party is necessary, then the court will order its joinder. Id. However, if joinder will destroy diversity, then the court must determine, pursuant to Rule 19(b), whether the case can continue in the party's absence. Id. If not, then "the party is indispensable and the action should be dismissed." Teamsters, 173 F.3d at 918. Dismissal for nonjoinder is disfavored, see Meade, 186 F.3d at 441, and the moving party bears the burden of demonstrating that joinder is required, see Am. Gen. Life and Accident Ins. Co. v. Wood, 429 F.3d 83, 92 (4th Cir. 2005).

### III. Discussion

#### A. Joinder of Nancy Mason

The Court will first consider the Estate's argument regarding the joinder of Nancy Mason as it implicates the Court's jurisdiction to hear this case. In its motion to dismiss, the Estate argues that dismissal of this action is required because ManorCare and Heartland failed to join Nancy Mason, a resident of West Virginia who the Estate claims is a necessary and indispensable party, "in an attempt to manufacture federal diversity jurisdiction." ECF No. 6 at 2. The Estate avers that Nancy Mason is a necessary and indispensable party in light of her status as the licensed nursing home administrator of Heartland during the decedent's residency. However, "in the case of nursing home administrators . . . courts have held that those administrators are not necessary parties under Rule 19 when another alleged joint tortfeasor seeks to enforce arbitration." Canyon

5

Sudar Partners, LLC v. Cole, Civil Action No. 3:10-1001, 2011 WL 1233320, at *3 (S.D. W. Va. Mar. 29, 2011); see also Northport Health Servs. of Ark., LLC v. Rutherford, 605 F.3d 483, 491 (8th Cir. 2010) (collecting cases) ("In the arbitration context, to our knowledge every circuit to consider the issue has concluded that a party joined in a parallel state court contract or tort action who would destroy diversity jurisdiction is not an indispensable party under Rule 19 in a federal action to compel arbitration.") Here, other alleged tortfeasors, ManorCare and Heartland, are seeking to enforce arbitration. Therefore, Nancy Mason is not a necessary party to this case. Consequently, she is not required to be joined as a plaintiff and, as a result, complete diversity remains between the parties.

### B.     The Arbitration Agreement

The principal argument set forth by the Estate is that the arbitration agreement entered into between ManorCare, Heartland and the decedent does not apply to it because "as a nonsignatory [it] cannot be compelled to arbitrate claims he or she never agreed to so arbitrate." ECF No. 6 at 2. In response, ManorCare and Heartland aver that, based upon the derivative nature of wrongful death actions, because the decedent's "right to maintain an action was subject to the ADR Agreement, the [Estate] is likewise bound to arbitrate under the agreement." ECF No. 8 at 15 (internal quotations omitted).

It is well settled that "the interpretation of an arbitration agreement is generally a matter of state law." Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp., 559 U.S. 662, 681 (2010) (citation omitted). Therefore, a federal court sitting in diversity interprets the language and meaning of an arbitration agreement according to state law. See Adkins v. Labor Ready, Inc., 303 F.3d 496, 501 (4th Cir. 2002). Specifically, "[w]hether a party

6

agreed to arbitrate a particular dispute is a question of state law governing contract formation." Id. (citing First Options of Chi., Inc. v. Kaplan, 514 U.S. 938, 944 (1995)). In addition, federal courts must pay heed to the law set forth in the FAA. See 9 U.S.C. §§ 1-16. The FAA applies to "[a] written provision in any . . . contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof." 9 U.S.C. § 2. The FAA favors arbitration of disputes. Adkins, 303 F.3d at 500. This policy of favoring arbitration reflects "Congress's view that arbitration constitutes a more efficient dispute resolution process than litigation." Id. (citing Hightower v. GMRI, Inc., 272 F.3d 239, 241 (4th Cir. 2001)). In fact, the inclination toward arbitration is so strong that "when the scope of an arbitration clause remains 'open to question' regarding the inclusion of a particular issue, a court *must* declare that the issue is subject to arbitration." Great Am. Ins. Co. v. Hinkle Contracting Corp., 497 F. App'x 348, 352 (4th Cir. 2012) (emphasis added) (citing Peoples Sec. Life Ins. Co. v. Monumental Life Ins. Co., 867 F.2d 809, 812 (4th Cir. 1989)).

### 1. Enforceability of the Arbitration Agreement Against the Estate

Before this Court is able to address whether or not ManorCare and Heartland can compel arbitration under the FAA, it must determine whether the Estate, as a nonsignatory, is bound by the arbitration agreement.[1] The Estate's state court cause of action alleges negligence, medical malpractice, fraud and violations of the West Virginia Consumer Credit and Protection Act against ManorCare, Heartland and other corporate

---

[1] The Estate does not call into question the legal validity of the arbitration agreement between ManorCare, Heartland and the decedent; it argues only that the arbitration agreement does not apply to it as a nonsignatory.

7

and individual defendants. The Estate contends that these alleged violations caused the decedent to sustain physical and emotional injury and, ultimately, death. West Virginia's wrongful death statute provides, in pertinent part:

> Whenever the death of a person shall be caused by wrongful act, neglect, or default, and the act, neglect or default is such as would (if death had not ensued) have entitled the party injured to maintain an action to recover damages in respect thereof, then, and in every such case, the person who, or the corporation which, would have been liable if death had not ensued, shall be liable to an action for damages, notwithstanding the death of the person injured.

W. Va. Code § 55-7-5. As evident from the statute, wrongful death actions in West Virginia are derivative in nature. See Syl. Pt. 4, Davis v. Foley, 457 S.E.2d 532 (W. Va. 1995) ("The damages in a wrongful death action arise out of the death of the decedent thereby making a wrongful death action a derivative claim."). Section 55-7-5 "preserve[s] a deceased person's right of action after the person's death, by permitting the claim to be brought by the deceased person's personal representative," Brooks v. Weirton, 503 S.E.2d 814, 821 n.7 (W. Va. 1998), and thus a wrongful death cause of action may be maintained only if "the deceased person himself could have maintained an action for damages had he survived," Panagopoulous v. Martin, 295 F. Supp. 220, 223 (S.D. W. Va. 1969) (first citing Hoover's Adm'x v. Chesapeake & Ohio Ry. Co., 33 S.E. 224 (W. Va. 1899); then citing Wright v. Davis, 53 S.E.2d 335 (W. Va. 1949)). Accordingly, an administrator cannot bring a wrongful death suit "where the deceased was guilty of contributory negligence, or received satisfaction or executed a release during his lifetime" because the statute gives rise to a cause of action "only where the deceased [himself] might have maintained an action." Hoover's Adm'x, 33 S.E. at 225.

8

According to West Virginia law, the Estate's state court wrongful death action exists only insofar as the decedent herself could have maintained an action for negligence, or other wrongful acts, against HCR ManorCare and Heartland. The state court action, and any potential recovery resulting therefrom, is thus derivative based upon the decedent's own ability to recover. Here, had the decedent survived, she would have been "limited in form to arbitration." See Wilkerson ex rel. Estate of Wilkerson v. Nelson, 395 F. Supp. 2d 281, 289 (M.D.N.C. 2005). Accordingly, the Estate is likewise limited, and bound, by the arbitration agreement.

### 2. Compelling Arbitration Under the Federal Arbitration Act

Upon finding that the Estate is subject to the arbitration agreement, the Court must next consider whether ManorCare and Heartland can compel arbitration under the FAA. A litigant can compel arbitration under the FAA

> if he can demonstrate (1) the existence of a dispute between the parties, (2) a written agreement that includes an arbitration provision which purports to cover the dispute, (3) the relationship of the transaction, which is evidenced by the agreement, to interstate or foreign commerce, and (4) the failure, neglect or refusal of [the other party] to arbitrate the dispute.

Adkins, 303 F.3d at 500-01 (internal quotations omitted) (quoting Whiteside v. Teltech Corp., 940 F.2d 99, 102 (4th Cir. 1991)). Here, ManorCare and Heartland have demonstrated all four necessary elements. First, there is a dispute between the parties. On February 16, 2016, the Estate notified ManorCare and Heartland of its intent to file suit by serving its notice of claim and screening certificate. In response, on March 17, 2016, ManorCare and Heartland sent the Estate a letter demanding that arbitration be initiated, pursuant to the arbitration agreement, within seven days. The Estate did not

9

reply to the letter and, instead, on April 4, 2016, filed a wrongful death suit in the Circuit Court of Kanawha County, West Virginia. Second, there is a written arbitration agreement—applicable to the Estate—which purports to cover the wrongful death claims. The agreement defines "disputes" as

> [a]ll claims arising out of or relating to this Agreement, the Admission Agreement or any and all past or future admissions of the Patient at this Center, or any sister Center operated by any subsidiary of HCR ManorCare, Inc. ("Sister Center"), including claims for malpractice.

ECF No. 1-1 at 1. The state court complaint alleges that instances of negligence, medical malpractice and fraud occurred during the decedent's residency at Heartland, a "sister center" of HCR ManorCare, Inc. Thus it is clear that these claims are considered "disputes" under the arbitration agreement. Third, the agreement is related to interstate commerce because it stipulates by its very own terms that "the Admission Agreement and the Patient's stays at the Center substantially involve interstate commerce." ECF No. 1-1 at 1; see GGNSC Morgantown, LLC v. Phillips, Civil Action No. 1:14CV118, 2014 WL 5449674, at *2 (N.D. W. Va. Oct. 24, 2014) (finding the third element satisfied where "the ADR Agreement by its terms" stated that it "evidence[d] a transaction in interstate commerce governed by the [FAA]"). Finally, it is evident that the Estate refuses to arbitrate. On April 4, 2016, it filed its wrongful death suit in state court and, more recently, on May 19, 2016, it filed its response in opposition to the Plaintiff's motion to compel arbitration with this Court. Therefore, because the arbitration agreement applies to the Estate's state court wrongful death action, and because ManorCare and Heartland have demonstrated the four elements under Adkins, arbitration may be compelled under the FAA.

10

### C. Anti-Injunction Act

Notwithstanding the existence of an enforceable arbitration agreement against it, the Estate contends that this Court is unable to grant the relief requested by ManorCare and Heartland because such relief would be in violation of the AIA. The AIA prohibits federal courts from granting injunctions to stay proceedings in state courts unless such action is "expressly authorized by Act of Congress," "necessary in aid of its jurisdiction" or necessary "to protect or effectuate its judgments." 28 U.S.C. § 2283. Simply put, the AIA works to preserve federalism. See Emp'rs Res. Mgmt. Co. v. Shannon, 65 F.3d 1126, 1130 (4th Cir. 1995).

The underlying complaint filed by ManorCare and Heartland requests that this Court enter an order compelling the Estate to arbitrate its wrongful death claims and, additionally, "[e]nter an Order staying and enjoining any other civil proceedings arising out of the matters threatened through, or related to the matters threatened through, [the Estate's] February 16, 2016 notice of claim and screening certificate of merit." ECF No. 1 at 9. The Court is aware of no authority suggesting that it may, in violation of the AIA, "grant a stay of state court proceedings in conjunction with a motion to compel arbitration." See Canyon Sudar, 2011 WL 1233320, at *11 (emphasis omitted). Federal courts in this circuit have, however, issued orders compelling arbitration, thereby indirectly restricting plaintiffs from prosecuting their claims in parallel state court proceedings. See, e.g., Nat'l Home Ins. Co. v. Bridges, 142 F. Supp. 3d 425, 433-35 (D.S.C. 2015); Canyon Sudar, 2011 WL 1233320, at *11-12; Galloway and Assocs., PLLC v. Fredeking & Fredeking Law Offices, LC, Civil Action No. 3:10-0830, 2010 WL 3955790, at *8-9 (S.D. W. Va. Oct. 8, 2010). Therefore, considering the "serious concerns of federalism and comity" arising

from a federal court's stay of state court proceedings, United Serv. Prot. Corp. v. Lowe, 354 F. Supp. 2d 651, 659 (S.D. W. Va. 2005), although the Court finds that the Estate is bound by the arbitration agreement, it declines to enjoin the related state court proceeding in this case. See Atl. Coast Line R.R. Co. v. Bhd. of Locomotive Eng'rs, 398 U.S. 281, 297 (1970) ("Any doubts as to the propriety of a federal injunction against state court proceedings should be resolved in favor of permitting the state courts to proceed in an orderly fashion to finally determine the controversy.") Therefore, insofar as ManorCare and Heartland request an order from this Court staying the proceeding in Kanawha County Circuit Court, the request is denied.

### D. Abstention

Finally, the Estate argues that the Court should exercise abstention pursuant to Younger and Colorado River. Upon review, the Court finds that neither doctrine applies to the circumstances of this case.

#### 1. Younger

Because "a federal court's obligation to hear and decide a case is virtually unflagging," Sprint Commc'ns, Inc. v. Jacobs, 134 S. Ct. 584, 591 (2013) (internal quotations and citation omitted), "[a]bstention is not in order simply because a pending state-court proceeding involves the same subject matter," id. at 588 (citation omitted). In Sprint, the Supreme Court of the United States recently clarified the three "exceptional circumstances" warranting Younger abstention: (1) when a federal court would have to intrude in an ongoing state criminal prosecution; (2) in certain "civil enforcement proceedings"; and (3) in "civil proceedings involving certain orders that are uniquely in furtherance of the state courts' ability to perform their judicial functions." Id. (internal

12

quotations and citations omitted). None of these circumstances are present in the instant case.

First, the state court proceeding is not a criminal prosecution. Second, the state court case is not akin to a criminal prosecution and thus it does not involve the particular kind of civil enforcement proceeding anticipated by Younger. See id. ("This Court has extended Younger abstention to particular state civil proceedings that are akin to criminal prosecutions." (citing Huffman v. Pursue, Ltd., 420 U.S. 592, 604 (1975))). Finally, there is no apparent state court order that is "uniquely in furtherance of the state court[']s ability to perform [its] judicial function[ ]." See id. (internal quotations and citation omitted). Therefore, because this case does not present any one of the three exceptional circumstances described in Sprint, abstention pursuant to the Younger doctrine is not justified.

### 2. Colorado River

Under the Colorado River doctrine, federal courts may refrain from hearing claims "in favor of ongoing, parallel state proceedings in cases where 'considerations of wise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation' clearly favor abstention." Ackerman v. ExxonMobil Corp., 734 F.3d 237, 248 (4th Cir. 2013) (quoting Colorado River, 424 U.S. at 817). The Court weighs six factors, "with the balance heavily weighted in favor of the exercise of jurisdiction," Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 16 (1983), in determining whether Colorado River abstention is proper:

> (1) whether the subject matter of the litigation involves property where the first court may assume *in rem* jurisdiction to the exclusion of others; (2) whether the federal forum is an inconvenient one; (3) the desirability of avoiding piecemeal

> litigation; (4) the relevant order in which the courts obtained jurisdiction and the progress achieved in each action; (5) whether state law or federal law provides the rule of decision on the merits; and (6) the adequacy of the state proceeding to protect the parties' rights.

Chase Brexton Health Servs., Inc. v. Maryland, 411 F.3d 457, 463-64 (4th Cir. 2005) (citations omitted). Similar to Younger, courts should apply the Colorado River doctrine only in exceptional circumstances. See id. at 463. However, before considering the Colorado River factors, courts must first determine whether there are actively pending and parallel federal and state cases. Id. ("The threshold question . . . is whether there are parallel federal and state suits.") State and federal actions are considered parallel when "substantially the same parties litigate substantially the same issues in different forums," id. at 464 (internal quotations and citation omitted), and "there is a substantial likelihood that the [state litigation] will dispose of all claims presented in the federal case," AAR Int'l, Inc. v. Nimelias Enters. S.A., 250 F.3d 510, 518 (7th Cir. 2001) (internal quotations and citation omitted). If the court determines that the federal and state cases are not parallel, then the Colorado River doctrine is inapplicable. Interstate Material Corp. v. Chicago, 847 F.2d 1285, 1287 (7th Cir. 1988); see also Am. Family Life Assurance Co. of Columbus v. Biles, 714 F.3d 887, 892 (5th Cir. 2013); Al-Abood v. El-Shamari, 217 F.3d 225, 232 (4th Cir. 2000); Crawley v. Hamilton Cty. Comm'rs, 744 F.2d 28, 31 (6th Cir. 1984); Shields v. Murdoch, 891 F. Supp. 2d 567, 578 (S.D.N.Y. 2012); Hayes v. City of Columbus, No. 2:10 CV 0513, 2011 WL 2174973, at *4 (S.D. Ohio June 3, 2011).

Here, the state and federal cases are not parallel. Although the underlying facts overlap, factual commonality alone does not lead to a finding that two proceedings are parallel. See New Beckley Mining Corp. v. Int'l Union, United Mine Workers of Am., 946 F.2d 1072, 1074 (4th Cir. 1991) ("[S]ome factual overlap does not dictate that proceedings

are parallel."). Of greater importance is the fact that the state complaint and federal complaint allege completely different causes of action. The state complaint raises claims of corporate and individual negligence, nursing home violations, medical malpractice, fraud and violations of the West Virginia Consumer Credit and Protection Act. In contrast, the complaint before this Court alleges only one claim for failure to arbitrate under the FAA—a federal act reflecting "a national policy favoring arbitration." See Southland Corp. v. Keating, 465 U.S. 1, 10 (1984). Unlike the state proceeding, the instant case does not involve wrongful death claims but rather raises only one question: whether the Estate may be compelled to arbitrate. See American Family, 714 F.3d at 892. Therefore, because the Court does not find the state and federal cases to be parallel, the Colorado River doctrine is inapplicable.

### IV. Conclusion

Accordingly, the Court **ORDERS** that the Defendant's Motion to Dismiss or, in the Alternative, Motion to Abstain [ECF No. 5] is **DENIED**. The Court further **ORDERS** that the Plaintiffs' Motion to Compel Arbitration [ECF No. 7] is **GRANTED**. The parties are **DIRECTED** to proceed to arbitration consistent with the terms of the arbitration agreement. As mentioned above, the Court declines to issue a stay of the related state court proceeding.

There being no other issues to address, the Court **ORDERS** this case **CLOSED** and **STRICKEN** from its active docket.

The Clerk is **DIRECTED** to enter a separate judgment order in favor of the Plaintiffs.

The Clerk is **DIRECTED** to transmit copies of this Order to all counsel of record herein.

**DATED:** September 2, 2016

_____
GINA M. GROH
CHIEF UNITED STATES DISTRICT JUDGE